ORDERED.

Dated: October 13, 2020

_____
Karen S. Jennemann
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION
www.flmb.uscourts.gov

| | |
|---|---|
| In re | ) |
| | ) |
| Orlando Cruz, | ) Case No. 6:16-bk-07815-KSJ |
| | ) Chapter 7 |
| Debtor. | ) |
| | ) |
| Jessica Doiron, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Adversary No. 6:17-ap-00043-KSJ |
| | ) |
| Orlando Cruz, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION FINDING DEBT NOT DISCHARGEABLE

Plaintiff, Jessica Doiron, worked as an Adult Nurse Practitioner for the Debtor, Dr. Orlando Cruz, for one year. On May 3, 2005, Dr. Cruz said she did "excellent" work in an evaluation form. Two days later, Plaintiff resigned from her job with Dr. Cruz to work for a competitor. Dr. Cruz was angry, and, on May 26, 2005, he sent a letter criticizing Plaintiff's work to the Missouri

nursing licensing board and local hospitals where she had practice privileges. A state court jury already has found the statements in the letter false, constituted defamation, and awarded Plaintiff damages of $150,000. The issue is whether this judgment debt is non-dischargeable under §523(a)(6) of the Bankruptcy Code.[1] Concluding that the defamatory statements made by the Debtor were "willful and malicious," I find the debt is not dischargeable.[2]

Section 523(a)(6) of the Bankruptcy Code excepts debts from discharge for "willful and malicious injury by the debtor to another entity or to the property of another entity."[3] To prevail on such a claim, "a plaintiff must prove by a preponderance of evidence that a debtor: 1) deliberately and intentionally; 2) injured the plaintiff or the plaintiff's property; 3) by a willful and malicious act."[4] Willfulness and malice are separate and distinct. "Willfulness" implies intentional behavior; "malice" connotes a malevolent purpose for the debtor's action.[5] A debtor commits a willful injury when he commits an intentional act to cause injury or which he knows is substantially certain to cause injury.[6] "Substantial certainty exists if a debtor knew and appreciated the substantial likelihood of injury to the party objecting to discharge."[7] A malicious act is "wrongful and without just cause or excessive even in the absence of personal hatred, spite or ill-will."[8]

Here, most facts already were established in the state court jury trial in Missouri. Dr. Cruz, through his medical practice, IDXpert, P.C. ("IDXpert"), specialized in fighting infectious diseases

---

[1] All references to the Bankruptcy Code refer to 11 U.S.C. § 101, *et. seq*.
[2] A trial was held on August 21, 2019. On July 21, 2020, the adversary proceeding was reassigned to me because the trial judge encountered serious health issues. I have thoroughly reviewed the amended transcript (Doc. No. 116), the record, and all admitted exhibits prior to rendering this Memorandum Opinion.
[3] 11 U.S.C. § 523(a)(6).
[4] *In re Howard*, 261 B.R. 513, 520 (Bankr. M.D. Fla. 2001) (citing *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1163-65 (11th Cir. 1995)).
[5] *Howard*, 261 B.R. at 520.
[6] *See Id.*; *In re Dowdell*, 406 B.R. 106, 114 (Bankr. M.D. Fla. 2009); *In re Vestal*, 256 B.R. 326, 329 (Bankr. M.D. Fla. 2000).
[7] *In re Vestal*, 256 B.R. 326, 329 (Bankr. M.D. Fla. 2000); *see Howard*, 261 B.R. at 520.
[8] *Hope v. Walker (In re Walker)*, 48 F.3d 1161, 1164 (11th Cir. 1995) (quoting *In re Ikner*, 883 F.2d at 991 (quoting *Sunco Sales, Inc. v. Latch (In re Latch)*, 820 F.2d 1163, 1166 n. 4 (11th Cir.1987))) (internal quotations omitted).

at several hospitals in or near St. Louis, Missouri.[9] Plaintiff was licensed as a certified Adult Nurse Practitioner ("ANP") by the Missouri State Board of Nursing (the "Nursing Board"). In April 2004, Dr. Cruz hired Plaintiff as an ANP to evaluate patients, assist in gathering patient information, communicate with patients, and conduct pre-rounds at hospitals under a Collaborative Practice Agreement ("CPA").[10]

Defendant supervised Plaintiff's work. Defendant periodically filed formal evaluations of Plaintiff's performance at each hospital where Plaintiff had practice privileges.[11] On May 3, 2005, Dr. Cruz prepared a performance review for the Plaintiff at St. Anthony's Medical Center rating Plaintiff excellent in every category.[12] Two days later, on May 5, 2005, Plaintiff resigned from IDXpert by handing Dr. Cruz her resignation letter.[13] Plaintiff testified Dr. Cruz appeared "surprised and shocked" and was "very emotional" upon receiving the resignation letter.[14]

Dr. Cruz met with the Plaintiff twice after receiving the resignation letter.[15] Within a week, he met with the Plaintiff to convince her to continue working with IDXpert.[16] So, Dr. Cruz obviously thought the Plaintiff's work satisfactory enough to ask her to continue working with him. Plaintiff, however, was determined to change jobs.[17]

At the second meeting on May 23, 2005, Dr. Cruz gave Plaintiff the infamous letter ("Letter") criticizing Plaintiff's professional competence, work-commitment, and moral character.[18] It is this letter that caused harm to the Plaintiff and started years of litigation between

---

[9] Defendant Exh. 39, ¶¶ 4, 6.
[10] Defendant Exh. 20. Doc. No. 116. 8/21/19 Am. Tr. at 95.
[11] Doc. No. 116. 8/21/19 Am. Tr. at 97.
[12] Plaintiff Exh. 1. The Review specifically stated Plaintiff received no complaints regarding patient care, performed no duties outside her delineated privileges, and Dr. Cruz provided no suggestions for improvements.
[13] Plaintiff Exh. 2. Plaintiff gave Defendant twenty days' notice of her resignation per the terms of the CPA.
[14] Doc. No. 116. 8/21/19 Am. Tr. at 13.
[15] Doc. No. 116. 8/21/19 Am. Tr. at 13-14.
[16] Doc. No. 116. 8/21/19 Am. Tr. at 13-15.
[17] Doc. No. 116. 8/21/19 Am. Tr. at 14.
[18] Doc. No. 116. 8/21/19 Am. Tr. at 14-15. Plaintiff Exh. 3.

the parties. Plaintiff testified that Dr. Cruz particularly was upset because he recently had learned Plaintiff planned to work at a competing practice, Infectious Diseases, P.C.[19] When the Plaintiff still refused to continue working with Dr. Cruz, on May 26, 2005, he sent the Letter to the Nursing Board and to every hospital where Plaintiff had practice privileges.[20]

Plaintiff's professional reputation and livelihood were harmed by the contents of the Letter and the events that ensued. The Nursing Board promptly investigated the Plaintiff's competence based on Dr. Cruz' statements in his Letter.[21] Rather than admitting the Letter was sent in anger and was not reflective of the Plaintiff's professional competence, Dr. Cruz "double downed." He denied rating the Plaintiff's work as "excellent" in his review on May 3, 2005, saying the review was a "clerical error."[22] Instead, he "meant" to prepare a review for *another* ANP, Janice Keim, the only other ANP he supervised.[23] On March 6, 2006, the Nursing Board decided no disciplinary action was warranted against Plaintiff.[24]

In 2008, Plaintiff sued Dr. Cruz for defamation in the Circuit Court of St. Louis County for the State of Missouri ("Missouri State Court").[25] After a full trial, the jury found Plaintiff was entitled to a $150,000 judgment for the damage to her professional reputation caused by the false statements in the Letter (the "State Court Judgment").[26] The state court, therefore, finally determined Dr. Cruz at fault for publishing the false statements about the Plaintiff that resulted in

---

[19] Doc. No. 116. 8/21/19 Am. Tr. at 14-15.
[20] Doc. No. 116. 8/21/19 Am. Tr. at 111-12, 120-21.
[21] Doc. No. 116. 8/21/19 Am. Tr. at 17-18.
[22] Doc. No. 116. 8/21/19 Am. Tr. at 103.
[23] Doc. No. 116. 8/21/19 Am. Tr. at 105. Defendant already completed a review of Janice Keim's work performance at St. Anthony's Medical Center on March 1, 2005, only two months prior to Dr. Cruz's review of Plaintiff. Plaintiff's Exh. 9.
[24] Plaintiff Exh. 7.
[25] Plaintiff Exh. 11 and 12.
[26] Plaintiff Exh. 13 and 14.

injury to her and her professional reputation.[27] The only remaining prong of §523(a)(6) requiring resolution is whether the false statements were made "willfully and maliciously."

As to the willfulness prong, Dr. Cruz deliberately wrote the Letter, initially as a threat to get the Plaintiff to remain in his employ. When she refused, Dr. Cruz sent the Letter to the Nursing Board and the hospitals where Plaintiff worked. He knew the Letter was certain to cause an injury to Plaintiff, which happened.

Dr. Cruz testified the credentialing and review process of his employees was very important and required careful consideration.[28] He acknowledged his reviews could affect Plaintiff's professional standing and privileges to work at other hospitals.[29] By acknowledging the importance of supervising doctor evaluations, Dr. Cruz admits false statements, such as those made by him against the Plaintiff, necessarily would injure the Plaintiff and her professional reputation.

During trial, Dr. Cruz stated that Letter was written to protect future patients not to negatively affect Plaintiff's credentials or hospital privileges.[30] The Court does not find this explanation credible considering the prior judgment finding his statements in the Letter false and

---

[27] Plaintiff Exh. 13 and 14. "The general principle of *res judicata* prevents the relitigation of issues and claims already decided by a competent court. 'Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel.' *Res judicata* comes in two forms: claim preclusion (traditional '*res judicata*') and issue preclusion (also known as 'collateral estoppel'). In considering whether to give preclusive effect to state-court judgments under *res judicata* or collateral estoppel, the federal court must apply the rendering state's law of preclusion."[27] *Community State Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011) (internal citations omitted). Under Missouri law, collateral estoppel requires that "(1) the issue decided in the prior case mirrors that in the present action; (2) the prior suit resulted in a final judgment on the merits; (3) the party against whom the doctrine is asserted participated as a party or in privity with a party to the prior adjudication; and (4) the party against whom the doctrine may apply had a full and fair opportunity to litigate the issue." *A.H. ex rel. Hubbard v. Midwest Bus Sales, Inc.*, 823 F.3d 448, 453-54 (8th Cir. 2016) (quoting *Hollida v. Hollida*, 190 S.W.3d 550, 554 (Mo. Ct. App. 2006). The State Court Judgment was a result of the same facts, occurrences, and transactions that are the basis of this Adversary Proceeding. Dr. Cruz actively participated in the litigation, and the State Court Judgment is entitled to *res judicata* finality.
[28] Doc. No. 116. 8/21/19 Am. Tr. at 108. Defendant stated he had to be "careful on everything" and "credentialing [of his employees] is important."
[29] Doc. No. 116. 8/21/19 Am. Tr. at 97, 132-33.
[30] Doc. No. 116. 8/21/19 Am. Tr. at 194.

defamatory. And the timing of the events argues against this altruistic reason for his defamatory and false statements. On May 3, 2005, Dr. Cruz said Plaintiff was an "excellent" ANP. When she resigned two days later then left his employment to work for a competitor, on May 26, 2005, Dr. Cruz suddenly changed his excellent opinion of the Plaintiff and complained to those who could damage her career most—the Nursing Board and the hospitals where she worked.

Dr. Cruz was angry Plaintiff wanted to work for a competitor after he had spent a year training her and reacted emotionally by publishing the false defamatory statements. Defendant is a highly intelligent individual.[31] He knew what would happen when he sent the Letter to the Nursing Board and hospitals—an investigation would start, and Plaintiff could lose her license and hospital privileges. Plaintiff has proven Dr. Cruz acted willfully in sending the Letter to others intending to cause her harm.

Dr. Cruz also acted maliciously in sending the Letter. He made false and defamatory statements intended to harm the Plaintiff, as finally determined in the State Court Judgment. His false statements were excessive and made in anger because the Plaintiff went to work for a competitor. Dr. Cruz admitted he exaggerated certain statements and included emotional overtones in the Letter.[32] These exaggerated, overstated, and false statements against Plaintiff were maliciously made to harm to the Plaintiff.

The Court finds Dr. Cruz willfully, maliciously, and deliberately injured the Plaintiff and her professional reputation. He wrote false and defamatory statements in the Letter then willfully and maliciously sent the Letter to those who could most harm the Plaintiff—the Nursing Board and hospitals where she worked. The Judgment Debt quantifies the extent of the harm and is non-

---

[31] Defendant Exh. 38. Defendant holds a degree from the St. Louis University School of Medicine and is certified by the American Board of Internal Medicine in Internal Medicine and Infectious Diseases.
[32] Doc. No. 116. 8/21/19 Am. Tr. 119, 131.

dischargeable under 11 U.S.C. § 523(a)(6). A separate Final Judgment for the Plaintiff and against the Defendant simultaneously shall enter.

###

Attorney, Neil L. Henrichsen, is directed to serve a copy of this order on interested parties who are non-CM/ECF users and file a proof of service within 3 days of entry of the order.